United States Bankruptcy Court
Southern District of Texas
**ENTERED**
April 06, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 22-20025 |
| ANTHONY G. PERKINS, *et al.*, § | |
| § | |
| Debtors. § | |
| § | |
| § | CHAPTER 13 |

## MEMORANDUM OPINION

The Chapter 13 Trustee objects to the Perkins' proposed chapter 13 plan. The Trustee alleges that the plan does not pay all the Perkins' disposable income to creditors due to proposed contributions to Mr. Perkins' 401(k) savings account. For the reasons set forth below, the Trustee's objection to the confirmation of the Perkins' plan is overruled. The proposed plan will be confirmed.

## BACKGROUND

On February 11, 2022, Anthony and Pamela Perkins (the Debtors) filed a voluntary petition under chapter 13 and proposed a Plan. (ECF Nos. 1, 2). Mr. Perkins is the family's sole breadwinner and is 58 years old. (ECF Nos. 36, 47 at 5). Ms. Perkins is not employed. (ECF No. 36). At filing, the Debtors had $11,757.91 saved in their 401(k) account, and had taken loans against those savings. (ECF No. 47 at 5). They are currently repaying those loans. (ECF No. 47 at 5).

The Trustee moved to dismiss the Debtors' case on April 19 because of the debtors' failure to properly file the means test required by 11 U.S.C. § 1325(b)(3). (ECF No. 27). The Debtors filed the First Amended Plan along with schedules and the means test in early May 2022, so their case was not dismissed. (ECF Nos. 29-34). The First

Amended Plan did not provide for full payment to the Debtors' unsecured creditors; instead, unsecured creditors were to receive an 18% return. (ECF No. 31 at 21). The First Amended Plan included a proposed downward adjustment to the Debtors' disposable income to allow for $1,553.84 to be contributed monthly to the Debtors' 401(k) account as well as $100.00 monthly to a bankruptcy savings account. (ECF Nos. 29 at 12, 31 at 2). The First Amended Plan also classified the Debtors' student loan debts as special debts and proposed to pay student loan creditors twice as much as other unsecured creditors. (ECF No. 31 at 14-15). The Trustee objected to confirmation of the First Amended Plan, alleging that (i) the 401(k) contributions were not proposed in good faith and (ii) the payments to unsecured student loan creditors unfairly discriminated amongst unsecured creditors. (ECF No. 35).

On May 13, 2022, the Debtors filed the Second Amended Plan with an updated means test. (ECF Nos. 36, 38). The Second Amended Plan also did not provide for full payment of the Debtors' debts, giving unsecured creditors a 24% return. (ECF No. 38 at 18). The Second Amended Plan removed the proposed payments to student loan creditors but increased both the Debtors' proposed voluntary 401(k) contributions to $1,700.00 per month and the Debtor's contributions to the bankruptcy savings account to $150.00 per month. (ECF Nos. 38 at 10, 36 at 12).

The record does not show that the Debtors have actually begun making the proposed contributions. (ECF No. 46 at 3). The Debtors provided proof of one contribution of $606.96 during the pay period of January 24 to February 6 of 2022. (ECF No. 47 at 2). The Debtors indicated that they made few, if any, 401(k) contributions in the two years before filing the bankruptcy petition. (ECF No. 47 at 4, 5). The proposed 401(k) contributions also exceed the amount matched by Mr. Perkins' employer. (ECF No. 47 at 5). On September 14, 2022, the

Trustee moved to dismiss the case because the Debtors had failed to make the payments to creditors required by the Second Amended Plan. (ECF No. 13). The case was not dismissed, contingent on the Debtors making up the missed payments.

The Trustee filed this objection on the grounds that (i) the Second Amended Plan's proposed voluntary 401(k) contributions prevent the entirety of the Debtors' disposable income from being paid for the benefit of creditors, and (ii) the Second Amended Plan does not meet the good faith standard required by 11 U.S.C. § 1325(a)(3). (ECF No. 46).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Plan confirmation is a core proceeding under 28 U.S.C. § 157(b)(2)(L). Venue in this court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

Courts must enforce a statute as it is written if the statute's language is plain. *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991). However, a statute's plain language does not control if following that plain language would produce an absurd result. *United States v. Solis-Campozano*, 312 F.3d 164, 166 (5th Cir. 2002). Additionally, a statute's interpretation must "fit coherently into the statute's overarching structure," with the court taking into account both the context of the language in question and the context of the entire statute, including the Bankruptcy Code, as a whole. *In re Lively*, 467 BR 884, 891 (Bankr. S.D. Tex. 2012); *In re Sierra*, 560 B.R. 296, 302 (Bankr. S.D. Tex. 2016) (explaining that statutory interpretation requires looking at language in light of both its specific context and the greater context of the entire statute). Statutes should be construed so that no clause, sentence, or word becomes superfluous, void, or insignificant. *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

A chapter 13 plan may only be confirmed if it was "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). If the Trustee objects to confirmation of a proposed plan, the plan must provide for all the debtor's projected disposable income be paid to unsecured creditors. § 1325(b)(1)(B). Because the Trustee has objected to the Second Amended Plan, the Court must determine whether the plan pays all the Debtors' projected disposable income to creditors. Good faith must always be shown.

## DISCUSSION

The Court must first determine whether the Bankruptcy Code excludes voluntary post-petition 401(k) contributions from the Debtors' disposable income. If contributions are excluded from disposable income, then the proposed plan does pay the Debtors' projected disposable income to creditors. At that point, the Court must then determine whether the debtors' proposed contributions meet the good faith standard required for plan confirmation.

**I.    THE CHAPTER 13 PLAN AND DISPOSABLE INCOME**

In a chapter 13 bankruptcy, the debtor must file a plan providing for future payment of the debtors' creditors. 11 U.S.C. § 1322. If the plan is confirmed by the bankruptcy court, it binds the debtor and the debtor's creditors. § 1327. Upon the successful completion of the plan, a debtor may receive a discharge. § 1328. The plan must be "proposed in good faith and by means not forbidden by law." § 1325(a)(3). If the chapter 13 trustee objects to the plan, it cannot be confirmed unless it either provides for full payment of creditors' claims or provides for all the debtor's projected disposable income to be distributed to creditors. § 1325(b)(1). The Second Amended Plan does not provide for full payment to creditors, so it must provide for all the debtors' projected disposable income to be distributed to creditors to overcome the Trustee's objection to confirmation.

The Bankruptcy Code does not provide a definition of *projected* disposable income. *Hamilton v. Lanning*, 560 U.S. 505, 509 (2010). The Code does, however, define disposable income to mean "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2). "Current monthly income," in turn, is defined as the debtor's monthly income in the six months preceding the filing of the bankruptcy petition. § 101(10A)(A). After examining the language in § 1325(b), the Supreme Court held that the Bankruptcy Code's use of the word "projected" with reference to the debtor's disposable income does not strictly limit the plan to encompassing only the debtor's actual income and expenses during the six months immediately preceding the bankruptcy petition. *Hamilton*, 560 U.S. at 523-24. Instead, when calculating the debtor's projected disposable income, "the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 524. Per the Supreme Court's holding in *Hamilton*, the debtors can make adjustments that lower their disposable income, lowering payments to creditors. Whether 401(k) contributions are a permissible adjustment hinges on further interpretation of the Code.

The commencement of a bankruptcy case creates a bankruptcy estate, and ownership of the debtor's property is automatically transferred to this estate. 11 U.S.C. § 541(a)(1). After commencement, the Code provides several mechanisms for additional property to become part of the estate, including property obtained by the debtor, property obtained by the chapter 13 trustee, and income arising from the debtor's pre-bankruptcy rights and property. *E.g.*, §§ 541(a)(3, 5-7). Outside of chapter 13, the wages an individual earns after commencement of the bankruptcy case do not become part of the bankruptcy estate. § 541(a)(6). However, chapter 13 includes the debtor's wages in its broad definition of the bankruptcy estate: "Property of the estate includes, in

addition to the property specified in section 541 of this title, all property of the kind specified in such section that the debtor acquires after the commencement of the case." § 1306(a)(1).

While § 541(a) describes how property enters the bankruptcy estate, § 541(b) excludes some classes of property from the bankruptcy estate. Section 541(b)(7) contains a hanging paragraph that states that property of the estate does not include any amount withheld from an employee's wages as contributions to a qualifying employee benefit plan "*except that* such amount shall not constitute disposable income as defined in section 1325(b)(2)." § 541(b)(7) (emphasis added).

The exact meaning of § 541(b)(7) is "less than clear." *In re Egan*, 458 B.R. 836, 843 (Bankr. E.D. Pa. 2011). Courts have varied widely in their interpretations of § 541(b)(7), with some courts reading it as allowing debtors to exclude voluntary 401(k) contributions from their disposable income, even if the debtors only began making the contributions after entering bankruptcy, while others read it to strictly disallow all post-petition 401(k) contributions because only pre-bankruptcy contributions are excluded from disposable income. *See, e.g.*, *In re Seafort*, 669 F.3d 662, 667-71 (6th Cir. 2012) (examining three different interpretations of § 541(b)(7)).

To correctly understand and apply § 541(b)(7), the Court must determine whether § 541(b) exclusions can apply to property acquired by the debtor after commencement of the case. *Seafort*, 669 F.3d at 667-71 (noting that some courts consider the commencement of the bankruptcy case as a fixed point in time at which the court must decide which property is excepted from the bankruptcy estate under § 541(b), while other courts apply § 541(b)'s exceptions to property acquired both pre- and post-petition). If § 541(b) applies to property a debtor acquires post-petition, § 541(b)(7) could except post-petition 401(k) contributions from becoming property of the estate and factor into the calculation of the debtor's disposable income. This interpretation

would allow a debtor to make voluntary post-petition 401(k) contributions while still paying all "disposable income" to creditors. *See Johnson v. Baxter (In re Johnson)*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006) (holding that § 541(b)(7) excludes 401(k) contributions from the debtor's disposable income). If § 541(b) does not apply to property a debtor acquires post-petition, 401(k) contributions would become part of the bankruptcy estate and be considered disposable income, so any post-petition 401(k) contribution would mean that the debtor is impermissibly failing to pay all disposable income to creditors. *See In re Aquino*, 630 B.R. 499, 596 (holding that § 541(b)(7) only excludes the debtor's pre-petition 401(k) contributions from the bankruptcy estate).

Section 541's plain language indicates that § 541(b) exclusions do apply to property acquired after the beginning of the bankruptcy case. A preeminent bankruptcy treatise explains that

> a few courts have concluded that section 541(b)(7) only protects retirement funds already in the hands of the employer. This conclusion makes no sense, because any funds in the hands of the employer as of the chapter 13 petition date would never be considered to be disposable income, which only includes income received by the debtor after the petition is filed. Funds that have already been paid to the debtor's account are dealt with, and separately protected by, the exemption provisions of section 522(b)(3)(C), (d)(10)(E) and (d)(12). The fact that the provision appears in section 541(b)(7) is perhaps poor drafting, but the reference to disposable income under section 1325(b), which encompasses only postpetition income, removes any doubt that postpetition contributions to the specified plans that are withheld by employers are to be excluded from the disposable income calculation.

5 Collier on Bankruptcy P 541.23 (16th 2022).

The Code's use of the phrase "except that" does not prevent a construction that excepts post-petition 401(k) contributions from the bankruptcy estate. Generally, "except that" indicates "an exception to an otherwise-applicable general rule," so courts have read § 541(b)(7)'s use of "except that" as support of the idea that only pre-petition 401(k) contributions are excepted from disposable income. *Davis v.* Helbling *(In re Davis)*, 960 F.3d 346, 354 (6th Cir. 2020). However,

the Code has used "except that" to indicate something other than an exception in various other provisions. *Id.* at 356. Courts should use the interpretation of the Code that best expresses Congress' intent despite "'awkward, or even ungrammatical' language." *Id.* (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534–35 (2004)). The best interpretation of the Code's text and purpose excepts post-petition 401(k) contributions from the debtors' disposable income. The "awkwardness of the language does not warrant a strained reading of an otherwise clear pronouncement that" post-petition 401(k) contributions are excluded from the debtors' disposable income. *In re Drapeau*, 485 B.R. 29, 37 (Bankr. D. Mass. 2013).

According to § 1306(a)'s plain language, it modifies § 541 as a whole: "Property of the estate includes, in addition to the property specified in section 541 of this title . . ." § 1306(a). Because § 1306(a) modifies § 541 generally, not just one subsection of § 541, § 1306(a) should be read to incorporate § 541(b)'s exceptions as well as modify § 541(a)'s inclusions. *Egan*, 458 B.R. at 845-46. Reading § 541(a)(1)'s language to limit § 541(b)'s application to only § 541(a) would prevent the Court from giving effect to the broad, inclusive language of § 1306(a).

Similarly, § 541(b)'s plain language suggests that its exceptions are broadly applicable to all potential property of the estate, not limited to § 541(a). "Property of the estate does not include . . ." § 541(b). Section 541(b) contains no qualifiers or language indicating its application is limited either by time or to a specific section; the plain text indicates that §541(b) applies broadly. § 541(b). If the exceptions in § 541(b) applied only to property entering the estate under § 541(a), the bankruptcy estate could easily come to encompass property of a type that the plain text of § 541(b) says is not included in the bankruptcy estate. The Court declines to adopt an interpretation of the Code that would lead to a result that conflicts with the statute's plain text. Therefore, the

plain text of § 1306 and § 541 require that they be read together to subject a chapter 13 debtor's post-petition wages to the exception for 401(k) contributions in § 541(b)(7).

These sections also must be considered within the general context of the Code. Chapter 13 plans are prospective; they govern the disposition of the debtor's assets over the five years following the confirmation of the plan. § 1322(d). Chapter 13 debtors must be individuals with regular income. § 109(e). Chapter 13 creditors ordinarily are not paid out of the assets the debtor possesses at filing. Instead, the debtor pays creditors over time out of the debtor's regular income that becomes property of the estate under section 1306(a). § 1322(a)(1). The bankruptcy estate is constantly in flux as the debtor's earnings are pulled in and then paid out to creditors, so it cannot be thought of as a static set of assets that can be fully defined at the commencement of the case. Applying § 541(b)(7) "on an ongoing basis" as the debtor is paid is "more consistent with the dynamic nature of chapter 13 cases." *Egan*, 458 B.R. at 845.

Other courts have found that the plain language of § 541 indicates that the exceptions in § 541(b) only apply to property entering the bankruptcy estate under § 541(a), not § 1306(a). *E.g.*, *In re McCullers*, 451 B.R. 498, 503-04 (Bankr. N.D. Cal. 2011) ("Section 541(b) creates exceptions to section 541(a)."). Section 541(a)(1) states that the debtor's interests in property as of the commencement of the case enter the bankruptcy estate "[e]xcept as provided in subsections (b) and (c)(2) of [section 541]." 11 U.S.C. § 541(a)(1). Section 1306(a), unlike § 541(a), does not reference the exceptions in § 541(b) specifically, leaving some doubt as to § 541(b)'s applicability to § 1306(a). A court trying to give meaning to Congress' intent as expressed in the Bankruptcy Code's plain language could conclude that Congress intended § 541(b)'s exceptions to exclusively apply to property entering the bankruptcy estate through § 541(a). *E.g. McCullers*, 451 B.R. at 503-04. This logic is not persuasive. Limiting § 541(b)'s application to § 541(a) would effectively

nullify § 541(b)(7)'s hanging paragraph, and it does not comport with a plain reading of the Code. Section 541(b)'s exceptions apply to all property entering the estate regardless of the section under which it enters the estate.

## II.    THE AMOUNT EXCEPTED UNDER § 541(B)(7)

Section 541(b)(7) states that "any amount" contributed to a debtor's 401(k) "shall not constitute disposable income." 11 U.S.C. § 541(b)(7). Courts have disagreed regarding whether the amount of a chapter 13 debtor's monthly 401(k) contributions can be increased after commencement of the bankruptcy case. *Compare In re Garza*, 575 B.R. 736, 752 (Bankr. S.D. Tex. 2017) (holding that post-petition 401(k) contributions are constrained only by good faith, IRS limits, and any other applicable provision of the Code) *with Davis*, 960 F.3d at 353-54 (holding that the amount a debtor can contribute is limited to the monthly amount contributed pre-petition). The more common view is that any amount of the debtor's post-petition income can be contributed to a 401(k), so long as that contribution is made in good faith. *E.g.*, *Garza*, 575 B.R. at 747. This view correctly hews closely to the plain text of 541(b)(7), which excludes "any amount" contributed to a 401(k) from disposable income. § 541(b)(7). Congress decided to not include any language in the Code that limits 401(k) contributions or tie them to pre-bankruptcy contributions.

The amount that may be contributed to a 401(k) plan is only constrained by applicable non-bankruptcy law. A bankruptcy court should not impose a contribution limit lower than the limit Congress imposed. So long as the contributions are below the maximum amount allowed by non-bankruptcy law ($22,500.00 per year in 2022), they are excluded from both the bankruptcy estate and the calculation of disposable income by § 541(b)(7). The Court lacks authority to regulate a debtor's use of non-estate property. *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT*

*Procurement Corp.)*, 764 F.3d 512, 525 (5th Cir. 2014). The Code says that "any amount" can be contributed to a 401(k). § 541(b)(7). Congress intended to allow debtors to maximize their savings to provide for a more stable financial future.

While some courts have read the Code as only allowing post-petition contributions of the same monthly amount as the debtor made before bankruptcy, that construction is not consistent with the Code. *See*, *e.g.*, *In re Seafort*, 437 B.R. 204, 209 (B.A.P. 6th Cir. 2010) (reading § 541(a), (b) as establishing a "fixed point in time at which" a court may properly evaluate what is considered state property, fixing the amount of the debtor's 401(k) contributions at the pre-petition amount). Section 541(b) does not contain any textual indication that its application should be constrained temporally. § 541(b). The idea that the bounds of the bankruptcy estate are determined at the commencement of the case is at odds with the dynamic structure of a Chapter 13 bankruptcy. *Egan*, 458 B.R. at 845-46 (holding that § 541(b) exclusions are applied "on an ongoing basis" throughout a bankruptcy case).

The text of § 541(b)(7) exempts an "amount," singular, from the debtor's disposable income, possibly indicating that the contribution is in a fixed amount. *Compare* § 541(b)(7) (excepting an "amount" from the debtor's disposable income) *with* § 1322(f) (excepting "amounts," plural, from the debtor's disposable income). Such a legalistic interpretation of the text places too much emphasis on a word that is both ambiguous and undefined by the Bankruptcy Code. *See Davis*, 960 F.3d at 353 (discussing the ambiguity of the word "amount" as used in section 541(b)(7)). Further, this reading is at odds with the Supreme Court's ruling in *Hamilton*. The calculation of a debtor's disposable income is not a purely mechanical calculation. *Hamilton*, 560 U.S. 523-24. Instead, disposable income is forward-looking and takes into account changes in the debtor's circumstances. *Hamilton*, 560 U.S. 523-24.

The court does not determine which assets are included and excluded from the property of the estate solely at the case's commencement, but rather on a continuous basis throughout the case. *See Garza*, 575 B.R. at 747-48 (reading § 541 to be generally inclusive of property acquired post-petition). As such, a chapter 13 debtor's 401(k) contributions are not limited to any particular amount by § 541. The Debtors' proposed 401(k) contributions do not necessitate rejecting the Perkins' plan. This Court must now examine whether the Debtors' chapter 13 plan was proposed in good faith.

Nevertheless, the statute does not permit the Debtor to deduct a 401(k) contribution that is never made. The exclusion in § 541(b)(7) is only for amounts "withheld" from the Debtor's wages. An intent to make a contribution will not suffice unless it is actually made.

The Debtors must demonstrate that the contributions have been withheld. Within 14 days, the Debtors must file proof that the amounts were withheld or tender the additional mounts to the Trustee. In addition, the Debtors must provide periodic proof, upon receipt of written request by the Trustee to their counsel, that the projected amounts have, in fact, been "withheld."

### III.   THE DEBTORS' PLAN MEETS SECTION 1325(A)(3)'S REQUIREMENTS

Once the debtor has proposed a chapter 13 plan, "the court shall confirm a plan if" the requirements set forth in § 1325(a) are met. § 1325(a). The plan must have been "proposed in good faith and not by any means forbidden by law." § 1325(a)(3). The plan must also be feasible, and the debtor must "be able to make all payments under the plan and to comply with the plan." § 1325(a)(6).

To determine if a plan has been proposed in good faith, the bankruptcy court must evaluate the proposed plan in its entirety, including the plan's proposed 401(k) contributions. *Miner v. Johns*, 589 B.R. 51, 62 (Bankr. W.D. La. 2018). The debtor carries the burden of proving the good

faith of the proposed plan but is entitled to a presumption of good faith where the plan complies with the requirements of the Code. *In re Price*, 609 B.R. 475, 480 (Bankr. N.D. Tex. 2019). However, once the debtor's good faith is established, the bankruptcy court must confirm the plan. § 1325(a). The court does not have discretion to reject a plan if section 1325(a)'s requirements are met. *Id.*

Good faith is examined using a totality of the circumstances test. *In re Whitt*, 616 B.R. 323, 331 (Bankr. S.D. Miss. 2020). This test examines a non-exclusive list of factors to consider: the proposed plan's reasonableness, whether the plan shows an attempt to abuse the spirit of the bankruptcy code, whether the debtor genuinely intends to effectuate the plan, evidence of misrepresentation or manipulation, fraudulent intent on the part of the debtor, whether the plan reflects the debtor's ability to pay, and whether a creditor has objected to the plan. *Id.* More broadly, the test requires an examination of all the facts to "determine the bona fides of the debtor." *Matter of Chaffin*, 816 F.2d 1070, 1074 (5th Cir. 1987).

It is difficult to find a lack of good faith when a debtor makes post-petition 401(k) contributions lower than the IRS limit.[1] The Code itself doesn't contain an express limitation on the amount a debtor can contribute to their 401(k). *See* § 541(b)(7) (stating that "any amount" can be excluded from disposable income for 401(k) contributions). Generally, a court cannot infer a lack of good faith from conduct permitted by the Code. *Egan*, 458 B.R. at 850. "Without something more, debtors 'are not in bad faith merely for doing what the Code permits them to do.'" *Price*, 609 B.R. at 480 (citing *In re Ragos*, 700 F.3d 220, 227 (5th Cir. 2012)).

---

[1] In 2022, the yearly limit on 401(k) contributions was $20,500. *Retirement Topics - 401(k) and Profit-Sharing Plan Contribution Limits*, Internal Revenue Service (Oct. 25, 2022), https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-401k-and-profit-sharing-plan-contribution-limits. The Perkins' latest amended plan proposes yearly 401(k) contributions of $20,400. (ECF No. 36 at 12).

Consequently, courts have been reluctant to find bad faith based solely on the amount of a debtor's proposed post-petition 401(k) contributions. Courts have found good faith in situations where the debtor's pre-petition contributions were lower than those proposed by the plan, the plan proposed to contribute the maximum amount allowed by the IRS, and the plan contributed to a 401(k) despite paying nothing to unsecured creditors. *See Egan*, 458 B.R. at 850-51 (holding that 401(k) contributions were proposed in good faith despite being higher than pre-petition contributions); *In re Nowlin*, 366 B.R. 670, 676 (Bankr. S.D. Tex. 2007) (holding that a debtor may make 401(k) contributions to the maximum amount allowed by IRS guidelines); *In re Whitt*, 616 B.R. 323, 332 (Bankr. S.D. Miss. 2020) (holding that post-petition 401(k) contributions were not in bad faith despite paying a 0% return to unsecured creditors). A lack of good faith is most often found where the debtor's proposed plan violates a provision of the Code. *See In re Jones*, No. 07-10902-13C, 2008 WL 4445041, at *5 (Bankr. D. Kan. Sep. 26, 2008) (declining to find that a plan was proposed in good faith where the plan didn't pay all sources of future income to creditors); *Nowlin*, 366 B.R. at 676 (finding a chapter 13 plan inadequate to the extent that post-petition 401(k) contributions exceeded the IRS limit).

Here, the Trustee doesn't allege that the Second Amended Plan explicitly violates the Code; the Second Amended Plan doesn't contain any provision expressly at odds with the Code. Instead, the Trustee argues that the Debtors' 401(k) contributions are unreasonably high compared to the distribution to unsecured creditors. The Second Amended Plan proposes 401(k) contributions amounting to 15% of the Debtors' salary while unsecured creditors receive a return of less than 25% of their claims. (ECF No. 46 at 5). The Debtors' contributions also exceed the amount matched by Mr. Perkins' employer. (ECF No. 47 at 5).

It is undisputed that unsecured creditors would receive a higher distribution if the Debtors did not take advantage of the Code's allowance of post-petition 401(k) contributions. However, it is difficult to find unreasonableness, even though the Debtors are using Code provisions for their own benefit at their unsecured creditors' expense, when the mechanisms used to do so are expressly allowed by the Code. The First Amended Plan proposed preferential payments to the Debtors' student loan creditors, but the Second Amended Plan removed those preferential payments and increased the distribution to other unsecured creditors. The Trustee does not establish facts demonstrating the "something more" needed to rebut the presumption of good faith.

Similarly, the Debtors' lack of 401(k) contributions during the two years preceding bankruptcy do not indicate a lack of good faith. Instead, increasing 401(k) contributions above the amount contributed before bankruptcy is expressly allowed by the Code, and doing what is allowed by the Code cannot be evidence of bad faith. Further, the Debtors should not forfeit their right to save for their fresh start because they suspended their contributions to their 401(k) plan to deal with the pre-bankruptcy issues that led them to seek bankruptcy's fresh start. The Second Amended Plan allows the Debtors to provide for their fresh start while also giving a return to unsecured creditors.

The Debtors' circumstances also weigh in favor of finding good faith. Ms. Perkins is not employed, and Mr. Perkins has faced health issues that could soon limit his ability to work. While many might limit their 401(k) contributions to the amount matched by their employer, considering Mr. Perkins' health and low pre-petition savings, the Debtors' desire to save as much as possible now is reasonable, particularly in light of the forward-looking nature of chapter 13.

Instead of indicating a lack of good faith, the Second Amended Plan's proposed 401(k) contributions indicate that the plan is feasible. If the plan's proposed contributions were too high

relative to the Debtors' other expenses, the Debtors may not have been able to fully comply with the plan. The plan would fail, and the Court would invalidate it under § 1325(a)(6). However, that is not the case here. Nothing indicates that the Debtors will not be able to comply with both their contributions to their 401(k) savings plan and their payments to creditors while still having money to cover their expenses. The fact that the proposed 401(k) contributions lower payments to creditors may actually make the plan more likely to succeed in the long term, increasing the actual distribution to unsecured creditors.

## CONCLUSION

The Trustee's objection to confirmation is overruled. The Second Amended Plan will be confirmed, with a special provision in the confirmation order requiring periodic proof of the amount withheld for 401(k) contributions.

SIGNED 04/06/2023

_____
Marvin Isgur
United States Bankruptcy Judge